**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BENJAMIN J. DAVIS, | : | |
| | : | Civ. No. 17-6876 (RBK) (JS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COUNTY OF CAPE MAY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiff Benjamin J. Davis' Complaint, asserting violations of the Eighth Amendment under 42 U.S.C. § 1983, and related state law claims. Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 18). Plaintiff filed an Opposition (ECF No. 23) and Defendants filed a Reply (ECF No. 24). For the reasons set forth below, the Court will grant in part Defendants' motion.

## I.    BACKGROUND

This case arises from Plaintiff's incarceration at the Cape May County Correctional Center. On January 13, 2017, Plaintiff woke up and was experiencing sharp and severe abdominal pain. Initially, Plaintiff believed that he was experiencing a stomachache or cramp and tried to "walk it off" during recreation time. (ECF No. 23-9, at 3).   After returning from recreation, at around 9:00 a.m., Plaintiff told Defendant Mellina that he was in severe pain despite trying to "walk it off" and that the pain "felt like somebody was stabbing" him. (*Id.*).  Defendant Mellina advised Plaintiff to fill out a "request slip" for the nurse and that the nurse "will get to [him] when she can." (*Id.*). According to Plaintiff, this process could "take a few days sometimes to get a response." (*Id.*).

Plaintiff makes conflicting allegations as to what transpired next, stating at times that he completed the slip and believes he handed it to an officer and other times stating that he does not recall completing or handing in the slip. (ECF No. 23-9, at 2). Plaintiff was unable to eat lunch and believes that another inmate (now deceased) reported his condition to an unspecified official. After lunch, Plaintiff's pain intensified to the point where he was nearly immobile, in almost a fetal position, but otherwise had no other symptoms.

 Around 2:00 or 3:00 p.m., Plaintiff again requested medical attention from Defendant Mellina, advising that his pain had only increased in severity. Defendant Mellina again advised Plaintiff to complete a request slip to see the nurse. Because Plaintiff believed—perhaps erroneously—that he had already completed and submitted a slip, that it was not necessary to submit a second slip.

After a shift change, at around 6:00 and 7:00 p.m., Plaintiff requested medical assistance from a new officer, who left to contact the nurse. Shortly thereafter, officials took Plaintiff by wheelchair to the nurse's office, where the nurse diagnosed him with appendicitis and stated that he needed to go to the hospital.

Plaintiff waited an hour and a half, in very serious pain, waiting for transportation to the hospital. During that timeperiod and in response to Plaintiff's request for an update, Defendant Quinlan told Plaintiff to relax, that they would take him to the hospital when they could, and asked Plaintiff whether he "was sure he didn't need to take a shit." (ECF No. 23, at 8).

Upon arriving at the hospital at approximately 9:00 p.m., staff rushed Plaintiff into surgery, for a laparoscopic appendectomy. Defendant Reeb accompanied Plaintiff into the operating room and refused to leave, advising that there was a "policy" that he stay in the room during Plaintiff's surgery. (ECF No. 23-9, at 3).

On January 14, 2017, the day after the surgery, it appears that someone, presumably a corrections employee, had shackled Plaintiff to the recovery room bed and advised someone that a policy required Plaintiff to remain shackled for "security reasons." (ECF No. 23-9, at 3). According to one of the treating nurses, Nurse Magnual, moving about after such a procedure is necessary for a proper recovery. If a patient does not ambulate after surgery, she advised that a patient could develop an ileus, a blockage which causes a patient to experience significantly more pain.

The next day, at around 9:00 a.m., another nurse, Nurse McNeal, became aware that Plaintiff was unable to get out of bed, and advised Defendant Cattell that Plaintiff needed to get out of bed in order to avoid complications. Defendant Cattell refused to immediately comply, referring to the bed restriction policy and cited that same policy to Nurse McNeal's supervising nurse. Between an hour and an hour and a half later, Defendant Cattell contacted his sergeant who allowed Defendant Cattell to unshackle Plaintiff and permit him to get out of bed.

Over the next few days, Plaintiff's condition deteriorated and on January 16, 2017, a doctor opined that Plaintiff was having a "questionable partial small bowel obstruction" that he believed was "most likely an ileus." (ECF No. 23-9, at 4). On January 19, 2017, Plaintiff underwent a second surgery to address the ileus, and returned to the jail on January 25, 2017. He had no further issues relating to his stomach or the appendicitis for the remainder of his sentence.

On September 8, 2017, Plaintiff named: the County of Cape May; the Cape May County Sheriff's Office; the County of Cape May Correctional Facility; Warden Donald J. Lombardo; Correctional Officer Mellina; Correctional Officer Quinlan; Correctional Officer Crawley; Correctional Officer Reeb; Correctional Officer Cattel; and Correctional Officer Frame as Defendants in this matter. Plaintiff sues the individual Defendants in their individual and official

capacities. Plaintiff brings claims under 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth Amendment, as well as corresponding state law claims.

## II.     STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ.*

*State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").

A party asserting that a fact is or is not genuinely in dispute "must support the assertion by citing to particular parts of materials in the record . . . or showing that [those] materials . . . do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether a court should grant summary judgment, the "court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

As a preliminary matter, the Court will address Plaintiff's numerous requests to deny Defendants' motion for summary judgment as premature. According to Plaintiff, he "anticipate[s]" conducting numerous depositions of the Defendants and healthcare professionals, other than Nurse McNeal, as discovery is "far from complete." (ECF No. 23, at 5, 14). Plaintiff also complains that he has not had "an opportunity to present an expert report on the relationship between the delay in allowing [Plaintiff] to ambulate and the need for the second surgery." (*Id.* at 9). In essence, Plaintiff seems to argue that he is still investigating this case. The appropriate mechanism to seek such a delay, however, is through a Rule 56(d) motion. *See, e.g.*, *Malouf v. Turner*, 814 F. Supp. 2d 454, 459 (D.N.J. 2011).

Under Rule 56(d), if a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer or deny the motion, or allow additional time to take discovery. Fed. R. Civ. P. 56(d). A nonmoving party should identify the alleged evidence, how they would preclude summary judgment, and why that party had not previously obtained such evidence. *Croker v. Applica Consumer Prod., Inc.*,

No. 05-3054, 2006 WL 626425, at *3 (D.N.J. Mar. 10, 2006) (citing *Pastore v. Bell Telephone Co.*, 24 F.3d 508, 511 (3d Cir.1994)).

Consequently, Rule 56(d) allows a nonmoving party to oppose a premature motion in situations where the nonmoving party has not had an opportunity to make full discovery. *Levine v. Bank Alt LLC*, No. 18-6400, 2018 WL 6573477, at *3 (D.N.J. Sept. 25, 2018); *see also Celotex*, 477 U.S. at 326.

In the present case, Plaintiff has not attached a Rule 56(d) affidavit. Nevertheless, the failure to attach a Rule 56(d) affidavit is not automatically fatal if the requisite information is within the party's opposition papers. *See St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994) (addressing then Rule 56(f)).

Generously speaking, Plaintiff's opposition identifies who he wishes to depose but only vaguely speculates that they "will yield additional evidence to support [Plaintiff's] claims." (ECF No. 23, at 14). Conversely, Plaintiff explains how an expert report would preclude summary judgment on the "relationship between the delay in allowing [him] to ambulate and the need for the second surgery," but fails to identify any proposed expert. (*Id*. at 9).

More critically, however, fact and expert discovery in this matter have concluded, and the parties advised that they do not intend to name trial experts. (ECF Nos. 11, 16). Plaintiff offers no explanation as to why he was unable to depose *any* of the Defendants and nearly all of the healthcare providers. Nor does he explain why he failed to secure an expert report within the approximately one-year discovery period, which included a number of discovery extensions. (*See* ECF Nos. 11, 16). Consequently, although Plaintiff may correctly state that "discovery in this matter is far from complete," he had ample opportunity to make full discovery. (ECF No. 23, at

5).

As a result, even construing Plaintiff's requests as a proper Rule 56(d) motion, Plaintiff fails to make the requisite showing to deny summary judgment under the Rule. Accordingly, the Court will deny Plaintiff's request and address the motion for summary judgment on the record currently before the Court.

## A. Municipal Liability Under § 1983

The County of Cape May argues that summary judgment is appropriate because Plaintiff has failed to support his claim against a local government entity under § 1983. More specifically, Defendants contend that "Plaintiff has not conducted or produced any discovery to demonstrate that Cape May County" had a policy or custom of delaying or denying medical care to prisoners.[1]

To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1255–56 (3d. Cir. 1994)). The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

A plaintiff may not, however, hold a local government unit "liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). To hold such an entity liable under § 1983, plaintiffs must demonstrate

---

[1] Plaintiff also names the Cape May County Sheriff's Office and the County of Cape May Correctional Facility as Defendants in this matter. In this context, however, Plaintiff cannot sue a county's sheriff's office or correctional facility in conjunction with the county it serves, because they are not "persons" amenable to suit under § 1983, as they are not entities "separate from the county, but rather [are] merely . . . [arms] of the county." *See, e.g.*, *Walker v. Cty. of Gloucester*, No. 15-7073, 2018 WL 1064210, at *3 (D.N.J. Feb. 27, 2018) (collecting cases); *Araromi v. Middle Twp. Police Dep't*, No. 10-1048, 2014 WL 1301524, at *11 (D.N.J. Mar. 31, 2014).

that a local government unit adopted a policy or custom and that such policy or custom had been "the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally requires that a local governing body's officers officially adopt and promulgate a "statement, ordinance, regulation, or decision." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. The County of Cape May may satisfy its burden for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case," and does so here. *See Celotex*, 477 U.S. at 325.

Assuming *arguendo* that there was a violation of a constitutional right, Plaintiff has failed to provide evidence to show that the County contributed to that violation. Plaintiff alleges that the

County "failed to train and have appropriate policies designed to protect and ensure proper medical attention is provided to detainees." (ECF No. 1, at 9). Plaintiff fails, however, to identify any specific *county* policies or customs, or otherwise refer to competent evidence thereof. Indeed, Plaintiff concedes that "discovery has not yielded a specific policy." (ECF No. 23, at 13).

Instead, Plaintiff contends, that some policy must exist, and that Plaintiff's deposition testimony and that of Nurse McNeal are sufficient to create a genuine issue of material fact on *Monell* liability. Plaintiff alleges that based on his treatment, "it is the prison's policy to force inmates suffering from a severe medical condition to drop a request slip and wait for medical attention," and that he heard Defendant Reeb state "that it was policy for [an officer] to remain in the surgery theater during surgery." (ECF No. 23, at 10). With regard to Nurse McNeal, her notes and testimony show that someone had advised her "that prison policy required Mr. Davis to remain shackled to the bed rather than being permitted to ambulate as needed for recovery." (*Id*.). In essence, Plaintiff appears to refer to the comments of three different employees to support the existence of three different policies.

Plaintiff cannot, however, rely on the "off-handed comments from *one* non-policy maker . . . to support municipal liability" for each policy, "as it is always possible that one employee will be ill-informed, or mistaken, or simply incompetent." *See, e.g.*, *Estate of Will v. Neshaminy Manor, Inc.*, No. 11-5482, 2013 WL 1187085, at *10 (E.D. Pa. Mar. 21, 2013)(citing *La Verdure v. County of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (finding that statements by a non-policymaker do not constitute county policy); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) (finding that the policy, and not the subjective beliefs of those who implement it, are the focus of a *Monell* analysis)).

Nor does Plaintiff refer to any evidence to demonstrate a pattern of underlying constitutional violations, such as other incidents related to delayed medical care, or the correctional officers' conduct at the hospital. Ultimately, Plaintiff cannot rely solely on his incident "to create a triable issue of material fact on [his] *Monell* . . . claim." *E.g.*, *Katzenmoyer v. Camden Police Dep't*, No. 08-1995, 2012 WL 6691746, at *5 n.9 (D.N.J. Dec. 21, 2012).

Accordingly, the Court will grant summary judgment on Plaintiff's *Monell* claim.

## B. Claims Against Warden Lombardo

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell,* 436 U.S. at 691 (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff fails to provide evidence describing how Defendant Lombardo violated his constitutional rights. Indeed, there is no mention of Defendant Lombardo in either of the statements of material facts. As a result, Plaintiff fails to offer evidence that Defendant Lombardo expressly directed the deprivation of his constitutional rights, created policies which left subordinates with no discretion other than to apply such policies, or was personally involved in the alleged violations. Plaintiff recites only the bare conclusion that Defendant Lombardo had "direct authority over" some unspecified policy or practice which gave rise to Plaintiff's claims.

Plaintiff may not, however, "merely restate the allegations of [his] pleadings or rely upon self-serving conclusions, unsupported by specific facts in the record" to defeat summary judgment. *E.g.*, *Eckhaus v. Consol. Rail Corp.*, No. 00-5748, 2003 WL 23205042, at *13 (D.N.J. Dec. 24, 2003). Accordingly, the Court will grant summary judgment as to Defendant Lombardo.

### C. Eighth Amendment Claims Against the Remaining Individual Defendants

Next, Defendants argue that summary judgment is appropriate as to the remaining individual Defendants, because Plaintiff fails to raise evidence in support of his Eighth Amendment claims. In the face of summary judgment, a "§ 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018).

Under the Eighth Amendment, for the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate that: (1) he had a serious medical need; (2) the defendant was deliberately indifferent to a substantial risk of serious harm; and (3) causation. *See, e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

As to the first prong, serious medical needs include: previously diagnosed conditions requiring treatment; those "that are so obvious that a lay person would recognize the necessity for a doctor's attention; and those conditions which, without treatment, would result in lifelong handicap or permanent loss." *Conchewski v. Camden Cty.*, No. 11-2781, 2014 WL 1153779, at *8 (D.N.J. Mar. 21, 2014) (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, 486 U.S. 1006 (1988)).

The next prong, deliberate indifference, has two components, it requires proof that the official: "[1] knows of and [2] disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). More specifically, Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. In this context, "deliberate indifference" is a subjective standard. *Bistrian v. Levi*, 696 F.3d 352, 367–69 (3d Cir. 2012). The official "must actually have known or been aware of the excessive risk to inmate safety" and it is "not sufficient that the official should have known of the risk." *Id.* at 367.

Finally, with regard to causation, a plaintiff must show that the deliberate indifference proximately caused his injury. *Abraham v. Digugleilmo*, No. 06-0058, 2010 WL 2136600, at *9 (E.D. Pa. May 25, 2010) (citing *Hamilton*, 117 F.3d at 746). "Absent an obvious causal relationship," a plaintiff must present "expert medical testimony on causation" in cases involving sophisticated medical issues. *Walthour v. Tennis*, No. 06-0086, 2009 WL 2957742, at *4 (M.D. Pa. Sept. 9, 2009); *see also Thomas v. Edelman*, No. 06-1281, 2010 WL 4027779, at *2 (E.D. Pa. Oct. 14, 2010).

Plaintiff also raises corresponding claims under the New Jersey Civil Rights Act, alleging deprivations of rights under the New Jersey Constitution. "Courts in this District have recognized that the Eight Amendment and the parallel paragraph in the New Jersey Constitution . . . provide congruent relief in the deliberate indifference context." *Jumpp v. Power*, No. 08-4268, 2009 WL 1704307, at *4 (D.N.J. June 18, 2009) (collecting cases). Consequently, the analyses in the following sections apply equally to Plaintiff's corresponding state law claims.

With those principles in mind, the Court observes that Defendants specifically address the lack of evidence as to each Defendant in their brief. On the other hand, Plaintiff argues the seriousness of his medical need, but then appears to treat the Defendants collectively, rather than individually address the remaining elements, *i.e.*, whether each Defendant: (1) was subjectively aware of a serious risk of harm; (2) disregarded that risk; and (3) was a proximate cause of Plaintiff's injuries.

### a. Defendants Quinlan and Crawley

The Court will first address Defendants Quinlan and Crawley, who encountered Plaintiff prior to his surgery. The only evidence against Defendant Quinlan is that he told Plaintiff to relax, that they would take him to the hospital when they could, and asked Plaintiff whether he "was sure he didn't need to take a shit." (ECF No. 23, at 8). At the time of this statement, Plaintiff was waiting at most, an hour and a half for his hospital transportation to arrive.

As to the first prong of an Eighth Amendment medical care claim, the Court rejects Defendants' argument that Plaintiff was not suffering from a "serious medical injury." (ECF No. 18-1, at 9). As the Third Circuit and other courts have held, "it is beyond question" that appendicitis is a serious medical need. *See, e.g.*, *Pearson*, 850 F.3d at 534 (citing *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) (explaining that appendicitis is objectively serious)).

More accurately, Defendants' arguments on this prong, which focus on Plaintiff's outward manifestations, relate to the subjective awareness component of the second prong, which asks whether a defendant was deliberately indifferent. Even assuming that Plaintiff's expressions of pain presented a serious risk, Plaintiff fails to show that Defendant Quinlan's crass remarks, without more, delayed or denied Plaintiff medical treatment, or caused his injuries.

As to Defendant Crawley, the only mention of him in Plaintiff's brief or statement of material facts, is that he accompanied Plaintiff to the hospital. Moreover, Plaintiff testified that to his knowledge, Defendant Crawley did nothing wrong or inappropriate. (ECF No. 18-3, at 74). Axiomatically, the act of taking Plaintiff to the hospital, standing alone, cannot sustain a claim for deliberate indifference to Plaintiff's medical needs. Accordingly, the Court will grant summary judgment as to Defendants Quinlan and Crawley.

### b. Defendants Reeb, Frame, and Cattel

Next, the Court will address the motion as to Defendants Reeb, Frame, and Cattel, who were present during Plaintiff's time at the hospital. Plaintiff contends that Defendant Reeb refused to leave the operating room during the day of the first surgery, citing "policy." (ECF No. 23-9, at 3). Here, the Court will assume that Plaintiff had a serious medical need, in the sense that he needed a clean operating room.

Plaintiff fails to offer evidence, however, as to how or why medical staff asked Defendant Reeb to leave, and in turn, whether Defendant Reeb was subjectively aware of a *serious* risk to Plaintiff. Plaintiff alleges in his Complaint that medical staff objected to Defendant Reeb's presence due to a "greatly increased risk of infection,"[2] and presumably advised him of that risk.

---

[2] The Court cannot infer from Defendant Reeb's refusal alone, for example, that he was aware that he presented a greatly increased risk of infection, even if he switched into sterile attire. (*See* ECF

Plaintiff cannot rely, however, on the mere allegations of his Complaint to survive summary judgment, "instead, he . . . must proffer specific facts by affidavit or other evidence." *Toscano v. Warren Cty. Dep't of Human Servs.*, 323 F. App'x 120, 121 (3d Cir. 2009) (internal quotation marks omitted).

More critically, even if Defendant Reeb's actions were deliberately indifferent, in the sense that he "intentionally interfer[ed]" with Plaintiff's "prescribed" course of treatment, Plaintiff offers no evidence or *allegations* on causation. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Plaintiff makes no mention of an infection anywhere in his brief or statement of material facts. Nor does the Court have any obligation "to scour the entire record to find a factual dispute."[3] *E.g., Dawley v. Erie Indemnity Co.*, 100 Fed. App'x 877, 881 (3d Cir. 2004). Accordingly, the Court will grant summary judgment as to Defendant Reeb.

Turning then to Defendant Frame, there is no mention of him whatsoever in the statements of material fact or Plaintiff's brief. For that reason alone, the Court could grant summary judgment. After a generous review of the record, Plaintiff's only allegation against Defendant Frame is that on the first day after surgery, he advised medical staff of the jail's bed restriction policy, and that someone would have to obtain authorization from a supervisor if it was necessary to unshackle Plaintiff. Plaintiff testified that he is unaware of any other involvement from Defendant Frame.

No. 18-3, at 56 (stating that Plaintiff believes that the officer in the operating rooms wore scrubs and a mask)).

[3] That said, the Court has reviewed the infectious disease consultation notes, which appear to opine that Plaintiff's appendix was necrotic and caused a fever but makes no mention of Officer Reeb's presence in the operating room. (ECF No. 23-6, at 2).

In the light most favorable to Plaintiff, this resulted in an approximately one day delay in allowing Plaintiff to ambulate. The Court will assume that Plaintiff's need to ambulate, in order to avoid an ileus, was a serious medical need.

Plaintiff fails to cite to any evidence, however, as to what prompted Defendant Frame to mention the policy, and in turn, whether he was subjectively aware of any risk to Plaintiff. Stated differently, Plaintiff fails to show that Defendant Frame was aware of the risk of an ileus and its connection to restricting Plaintiff's movement, or if anyone asked him to unshackle Plaintiff or contact his supervisor. Nor does Plaintiff refer to any evidence as to how the delay caused Plaintiff's injuries, namely the second surgery.

Plaintiff alleges in his Complaint that this delay caused the second surgery, but again, Plaintiff cannot rely solely on the allegations in his Complaint. *Toscano*, 323 F. App'x at 121. Nor does this case involve an "obvious causal relationship," in which the injury is an "immediate and direct" result of the underlying act. *See, e.g.*, *Walthour*, 2009 WL 2957742, at *4 n.5.

Indeed, Plaintiff contends that the instant motion is premature, in part, because he needs, *but does not have*, "an expert report on the relationship between the delay in allowing [Plaintiff] to ambulate and the need for the second surgery." (ECF No. 23, at 9). Without an expert report or other competent evidence on causation, perhaps from a treating physician, this claim involves sophisticated medical issues and cannot survive summary judgment on this issue. *Id.* at *4; *see also Thomas*, 2010 WL 4027779, at *2.

Plaintiff's evidence against Defendant Cattel suffers from similar deficiencies. Plaintiff alleges at approximately 9:00 a.m., on the second day after surgery, Nurse McNeal became aware that Plaintiff was shackled to the bed and told Defendant Cattell that he needed Plaintiff needed to ambulate to avoid complications from surgery. Officer Cattell refused to immediately unshackle

Plaintiff. Instead, he advised Nurse McNeal of the policy that required authorization from his supervisor to unshackle Plaintiff. Plaintiff complains that Nurse McNeal had to "jump[] through hoops" to get Plaintiff out of bed, but admits that Officer Cattell contacted his supervisor, received authorization, and unshackled Plaintiff within at least thirty minutes and at most an hour and half. (ECF No. 23-9, at 4).

The Court will assume that the need to ambulate after surgery was a serious medical need. As to the remaining evidence, such evidence could conceivably show that Defendant Cattel was aware of a substantial risk of harm and delayed "medical treatment based on a nonmedical reason," *i.e.*, based on a security reason.[4] *See Rouse*, 182 F.3d at 197. Like Defendant Frame, however, without an expert report or other competent evidence on causation, the Court cannot infer that a one-and-a-half-hour delay caused Plaintiff to undergo a second surgery, nearly four days later. *Walthour*, 2009 WL 2957742, at *4; *see also Thomas*, 2010 WL 4027779, at *2. Consequently, the Court will grant summary judgment as to Defendant Cattel. Ultimately, if Plaintiff possesses evidence to rebut such conclusions as to these Defendants, such evidence is well concealed from the Court.

### c. Defendant Mellina

The Court arrives at a different conclusion as to Defendant Mellina, the first officer to hear Plaintiff's complaints. As discussed above, Plaintiff's appendicitis was a serious medical need. As to subjective awareness, Defendants characterize all of Plaintiff's complaints to Defendant Mellina as mere "abdominal pain" and "stomach discomfort" (ECF No. 18-1, at 12; ECF No. 24,

---

[4] Although not necessary to the Court's disposition, Plaintiff would likely have to show evidence that Defendant Cattel caused a delay based on a legitimate security reason, "without any consideration of the medical needs involved," in order to show that he acted with deliberate indifference. *See Hearns v. Johnson*, No. 16-3284, 2016 WL 4690386, at *5 (D.N.J. Sept. 6, 2016).

at 7). Defendants compare the instant case to *Daniels v. Corr. Med. Servs.,* 380 F. Supp. 2d 379, 382 (D. Del. 2005), in which that court found that Defendants were not subjectively aware of the risk to Mr. Daniels, because he only portrayed symptoms of nausea, stomach ache, and an inability to pass a bowel movement.

Unlike Mr. Daniels, Plaintiff represented to Defendant Mellina that he was experiencing a severe and specific kind of pain. According to Plaintiff, at around 9:00 a.m., on January 13, 2017, he reported to Defendant Mellina that he was in "severe pain" and was experiencing "very sharp pains in [his] abdomen" that felt like someone was "stabbing him." (ECF No. 18-3, at 37–38). Then, between 2:00 and 3:00 p.m. that day, he advised Defendant Mellina that he was still experiencing pain and that it was "gradually getting worse." (*Id*. at 43). In response to these complaints, Defendant Mellina only advised Plaintiff to fill out a request slip to see the nurse.

In the light most favorable to Plaintiff, Defendant Mellina encountered an inmate "suffering from excruciating pain . . . who had twice sought medical assistance . . . reporting the same complaint but with increasing severity." *See Pearson*, 850 F.3d at 541. Defendant Mellina cannot escape liability merely by "declin[ing] to confirm strong inferences of risk," or by delaying "care for an emergent condition . . . [relying] on a sick call policy." *Id*. (quoting *Farmer*, 511 U.S. at 843 n.8) (citing *Natale*, 318 F.3d at 583)).

A reasonable factfinder could conclude, under these circumstances, that Defendant Mellina deliberately denied or delayed Plaintiff from receiving medical treatment for nonmedical reasons, "in spite of evidence that he was aware that [Plaintiff] faced a substantial risk of harm." *Id*. at 541. With regard to causation, a reasonable factfinder could conclude that that this conduct caused Plaintiff to suffer approximately ten hours of unmitigated pain. Accordingly, the Court concludes that a genuine issues of material fact exists as to whether Defendant Mellina violated Plaintiff's

rights under the Eighth Amendment, as well as the corresponding rights under the New Jersey

Civil Rights Act, in his individual capacity.

The Court will, however, grant summary judgment as to Defendant Mellina in his official

capacity. Such a claim is duplicative of Plaintiff's claims against the County. An "official capacity

suit is, in all respects other than name . . . a suit against the entity." *See, e.g., Baez v. Lancaster

Cty.*, 487 F. App'x 30, 32 (3d Cir. 2012) ("The claim against Warden Guarini in his official

capacity is duplicative of the suit against the County. As a result, summary judgment was properly

granted in favor of . . . Warden Guarini in his official capacity."); *White v. City of Vineland*, No.

16-8308, 2018 WL 4583509, at *4 (D.N.J. Sept. 24, 2018).

### D. Qualified Immunity

Defendants collectively assert that they enjoy qualified immunity from suit, but do not

analyze any claims as to any individual Defendants' actions, such as Defendant Mellina.

Government officials are generally immune from suit for civil damages so long as their

conduct "does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To

determine whether defendants are entitled to qualified immunity, a two-step analysis is necessary.

First, the Court must consider whether, "taken in the light most favorable to the party asserting the

injury, [] the facts . . . show [that] the officer's conduct violated a constitutional right." *Hamilton*,

322 F.3d at 786 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Second, if the alleged facts support a finding of a constitutional violation, a court must "ask

whether the right was clearly established." *Id.* This means that "there must be sufficient precedent

at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the]

defendant on notice that his or her conduct is constitutionally prohibited." *Bistrian v. Levi*, 696

F.3d 352, 366 (3d Cir. 2012) (citing *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)) (alterations in original).

According to Defendants, their argument, in its entirety, alleges only that their "conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." (ECF No. 18-1, at 22). Consequently, as applied to Defendant Mellina, it appears that he only seeks qualified immunity under prong one of the qualified immunity analysis. As set forth above, however, there is sufficient evidence to survive summary judgment on Plaintiff's Eighth Amendment claims against Defendant Mellina.

Further, the "the law with regard to a constitutional obligation to provide care to inmates suffering unnecessary pain from a serious medical need has been clear since at least 1976, when the United States Supreme Court decided [*Estelle*, 429 U.S. at 104]." *Consonery v. Pelzer*, 558 F. App'x 271, 274–75 (3d Cir. 2014) (agreeing with the District Court's conclusion). The Supreme Court has set up the framework for analyzing claims of deliberate indifference to serious medical needs long before the events giving rise to Plaintiff's claims in 2017. *See, e.g., id.*; *Coleman v. United States*, No. 15-1942, 2017 WL 2636045, at \*14 (D.N.J. June 19, 2017).

Accordingly, the Court cannot find at this time that Defendant Mellina is entitled to qualified immunity from suit and will deny summary judgment as to Defendant Mellina, in his individual capacity.

Additionally, although "[p]unitive damages are not available against local officials in their official capacity," they are available against local officials in their individual capacities. *E.g.*, M.B. v. Schuylkill Cty., 375 F. Supp. 3d 574, 593 (E.D. Pa. 2019). As discussed above, because the

Court finds that an issue of material facts exists as to whether Defendant Mellina was *deliberately*[5]

indifferent to Plaintiff's rights and safety, the Court will deny summary judgment as to Defendant

Mellina on the issue of punitive damages.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny summary judgment as to Defendant Mellina

in his individual capacity, grant summary judgment as to Defendant Mellina in his official

capacity, and grant summary judgment as to the remaining Defendants.  An appropriate order

follows.

Dated:  September  18th,  2019

  s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[5] "Punitive damages in § 1983 cases are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others." *Keenan v. City of Phila.*, 983 F.2d 459, 469–70 (3d Cir. 1992) (internal quotation marks omitted).  With respect to deliberate indifference claims, it is "fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836–37.